UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES P. TROWBRIDGE,
     Plaintiff,

     v.

ENA WERNICKI, *Owner*, WILLIAM C.
WERNICKI TRUCKING CO.,
     Defendants.

No. 3:13-cv-01797 (JAM)

**ORDER GRANTING MOTION TO DISMISS**

     For more than fifteen years, plaintiff James P. Trowbridge worked as a truck driver for defendant William C. Wernicki Trucking Co. ("Wernicki Trucking"), a Connecticut company owned by defendant Ena Wernicki. But the employment relationship soured in 2011 and 2012 when plaintiff requested that defendants compensate him for unpaid work hours and vacation time. Defendants promptly paid plaintiff all the money that he claimed was owed, but over the next several months they also reduced plaintiff's work hours and then eventually terminated his employment.

     After his termination, plaintiff initiated this lawsuit. Plaintiff's complaint sets forth three claims: retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count One); a violation of the McNamara-O'Hara Service Contract Act ("SCA"), 41 U.S.C. § 6701 *et seq.* (Count Two); and intentional infliction of emotional distress (Count Three). Defendants have moved to dismiss each of these claims under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, I conclude that plaintiff's complaint does not set forth any plausible grounds for relief, and I therefore grant defendants' motion to dismiss the

1

complaint.

## BACKGROUND

The complaint alleges the following facts. Wernicki Trucking is a company based in Norwich, Connecticut that provides mail-hauling services pursuant to several contracts with the United States Postal Service ("USPS"). By virtue of these contracts, Wernicki Trucking must comply with obligations imposed by the SCA, including providing its workers with certain minimum wages, vacation pay, holiday pay, and other fringe benefits.

Plaintiff began working as a truck driver at Wernicki Trucking in September 1996. In October 2011, plaintiff approached the company's owner, Ena Wernicki, regarding "years of missing vacation pay." Doc. #1 (Pl.'s Compl.), ¶ 10. Wernicki agreed that plaintiff was owed many weeks of unpaid vacation time covering vacations taken as far back as 1997, and she told plaintiff that the failure to pay this money was due to a "computer malfunction." *Ibid.* Over the next few months, plaintiff received checks from defendants totaling $16,259, apparently as compensation for 19 weeks of vacation time.

In late December 2011, just a few months after lodging his complaint regarding unpaid vacation time, defendants "altered plaintiff's long-time work schedule," requiring that plaintiff take Saturday off from work. *Id.* ¶ 13. In early February 2012, defendants further reduced plaintiff's work hours to require that he not work on both Thursday morning and Saturday. According to plaintiff, this cut in hours was "unprecedented," because he had never before been assigned more than one day off per week. *Id.* ¶ 15.

About two weeks later, plaintiff gave Wernicki a letter "asking her about her compensation obligations under the FLSA," and "br[inging] up the issue of [hundreds of] unpaid work hours." *Id.* ¶ 18. Within an hour of receiving this letter, Wernicki called plaintiff

and informed him that defendants would compensate plaintiff for all 702 hours mentioned in the letter. Just two days later, plaintiff received a check from Wernicki Trucking for $16,568.83, apparently as compensation for 702 unpaid work hours.

But one week later, defendants assigned plaintiff "forced vacation" time. *Id.* ¶ 20. Plaintiff felt that this mandated vacation time as well as the recent reductions in his work hours were retaliation for his complaints about unpaid vacation and work hours, and so plaintiff filed a retaliation complaint with the Wage and Hour Division of the United States Department of Labor ("DOL"). Plaintiff, however, does not allege that he told defendants about the DOL retaliation complaint, and the complaint is otherwise devoid of any allegations indicating that defendants would have had reason to know of the existence of the complaint before the onset of this lawsuit.

Just a few days later—on March 1, 2012—Wernicki revoked permission for plaintiff to drive his work truck to church on Saturdays, as management at Wernicki Trucking had previously permitted. Eight days later, defendants further cut plaintiff's hours, permitting him to work just three days per week. Also on that date, "Plaintiff sent a letter to . . . Wernicki informing her that the recent forced vacations and severe cuts in his hours looked like she was retaliating against Plaintiff for having to pay Plaintiff over $32,000 for unpaid vacation and wages." *Id.* ¶ 24.

Less than a month later, on April 3, 2012, defendants terminated plaintiff's employment, allegedly due to plaintiff causing "excessive clutch damage" to a mail truck. *Id.* ¶ 29. Plaintiff "vehemently denie[s]" this accusation. *Ibid.*

Nothing ever came of plaintiff's DOL complaint. According to plaintiff, "the [DOL] investigation ultimately collapsed under the weight of staggering and outrageous internal

3

miscommunication." *Id.* ¶ 25. On October 4, 2012, the DOL closed its investigation into plaintiff's retaliation claim.

DISCUSSION

The principles governing this Court's consideration of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are well established. The Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 159 (2d Cir. 2014). But "'[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir.2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, defendants have moved to dismiss all three claims set forth in plaintiff's complaint, and I address each claim in turn below.

### *FLSA Retaliation (Count One)*

The FLSA's anti-retaliation provision prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). A *prima facie* case of FLSA retaliation requires: "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

The law is clear that a plaintiff alleging FLSA retaliation may, but need not, recite or plead in a complaint each of these three requirements for a retaliation claim. *See Swierkiewicz*

4

*v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002); *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006) (*per curiam*). Employment retaliation claims are not subject to any such "heightened pleadings requirement[s]"; rather, a plaintiff in a retaliation case must meet the ordinary pleading standard—that is, he or she must plead facts "necessary to state his claim and the grounds showing entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing *Swierkiewicz*, 534 U.S. at 508).

In other words, while an FLSA retaliation plaintiff need not plead a rote recitation of each element of a *prima facie* case in order to survive a motion to dismiss, his or her complaint still must be at least "facially plausible" and "give the defendant fair notice of the basis for the claim." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 n.10 (2d Cir. 2014) (citing *Mohawk v. William Floyd Sch. Dist.*, 2014 WL 838162, at *2 (E.D.N.Y. 2014)). And "'[f]or this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a *prima facie* case.'" *Mohawk*, 2014 WL 838162, at *2 (quoting *King v. U.S. Sec. Assocs., Inc.*, 2012 WL 4122025, at *5 (S.D.N.Y. 2012) *report and recommendation adopted*, 2012 WL 4327396 (S.D.N.Y. 2012)).

In this case, defendants have moved to dismiss plaintiff's FLSA retaliation claim on the ground that plaintiff's complaint does not indicate that he participated in an FLSA-protected activity that was known to defendants before they terminated plaintiff's employment. Although defendants readily concede that plaintiff's filing of his DOL complaint was a protected activity, they contend that a retaliation claim cannot stand absent some basis to believe that the employer was aware (or at least had reason to be aware) of the complaint. *See, e.g.*, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1334–35 (2011) (noting that § 215(a)(3) "requires fair notice" to the employer, "[a]nd it is

difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint"); *cf. Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (Title VII retaliation claim). But, in view of the fact (as noted above) that a plaintiff claiming retaliation in violation of the FLSA need not formally plead a *prima facie* case, there is no requirement that a plaintiff affirmatively or specifically allege in his or her complaint that an employer had knowledge of the protected activity. Still, in order to satisfy the plausibility standard, there must be some plausible inference—gleaned from the factual allegations in the complaint, the posture of the litigation, or other relevant circumstances—that the employer had knowledge of the plaintiff's participation in a protected activity.[1] *See, e.g., Hagan v. City of New York*, 39 F. Supp. 3d 481, 502 (S.D.N.Y. 2014) (noting that plaintiff "plausibly alleged knowledge on the part of the [defendant employer]"); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 2010 WL 1778794, at *4 (S.D.N.Y. 2010) (rejecting employer's argument that plaintiffs failed to plead knowledge element because employer "acquired knowledge of plaintiffs' participation in this lawsuit through the course of litigation as a matter of law").

Here, I can discern no plausible basis to infer that defendants had any knowledge of plaintiff's formal complaint to the DOL prior to terminating plaintiff's employment. The

---

[1] I recognize that some district courts in this Circuit have held to the contrary, and denied motions to dismiss even absent indication that the employer had knowledge of the plaintiff's protected activity. *See Doroz v. Tect Utica Corp.*, 2013 WL 316614, at *5 (N.D.N.Y. 2013) ("Although plaintiff does not identify whether defendant was aware of plaintiff's protected activity . . . , plaintiff's complaint provides defendant with fair notice of his retaliation claim."); *Jordan v. Potter*, 2007 WL 952070, at *8 (E.D.N.Y. 2007) (denying motion to dismiss a *pro se* complaint even where plaintiff did "not identify what the [protected] activity was or whether defendant was aware of that activity" because "plaintiff's complaint provides defendant with fair notice of his retaliation claim and the grounds upon which it rests"). I cannot see how these decisions are consistent with the Supreme Court's holding that all complaints—including employment discrimination and retaliation claims—must set forth "a claim to relief that is plausible on its face" in order to withstand a motion to dismiss. *Twombly*, 550 U.S. at 570. An FLSA retaliation claim is plainly not plausible in the absence of any reason to suppose that defendant had knowledge of plaintiff's participation in a protected activity.

complaint does not allege that plaintiff told defendants about his DOL complaint, or told them that he had even communicated at all with the DOL. And at oral argument, plaintiff's counsel conceded that plaintiff in fact did not tell defendants about the DOL complaint. Nor are there any other circumstances suggesting that defendants would have learned of the complaint within the few weeks between its filing on February 27, 2012, and plaintiff's termination on April 3, 2012. As discussed with the parties at oral argument, there is no indication, for example, that the DOL has a policy of promptly notifying an employer when it receives an employee retaliation complaint; to the contrary, the DOL—like any investigative agency— would have strong reason *not* to alert an employer about an employee's complaint without the employee's knowledge or consent and before it has had the opportunity to investigate the complaint.[2] In short, insofar as plaintiff could base his retaliation claim on his engaging in the protected activity of filing a complaint with the DOL, I conclude that there is no plausible grounds for relief for lack of any indication or reasonable inference that defendants were aware of the DOL complaint prior to plaintiff's termination.

In the alternative, plaintiff seeks to base his retaliation claim on the fact that he lodged internal complaints to defendants themselves about their failure to comply with the FLSA's compensation requirements. Plaintiff cites a letter he wrote to Wernicki dated February 16, 2012 (asking about defendants' "compensation obligations under the FLSA"), another letter he wrote to Wernicki dated March 9, 2012 (noting that it looked like "she was retaliating against plaintiff"), and the numerous verbal complaints he made about the non-payment of

---

[2] Attached to plaintiff's complaint is a letter from the DOL to plaintiff dated March 14, 2012—less than three weeks before plaintiff was terminated—informing plaintiff that his complaint had been "accepted" and that the DOL "will contact you once your complaint is assigned for investigation." *See* Doc. #1-1. Defendants were not copied on this correspondence, and there is no indication that they received it. Plaintiff did not append to his complaint any further correspondence addressed to him from the DOL, such as a document that might indicate when the complaint was actually assigned for investigation or when—if at all–defendants were notified by the DOL of the complaint.

work hours and vacation time as examples of informal complaints that are protected activities under the FLSA.

Although defendants were doubtlessly aware of these internal complaints, these kinds of internal, intracompany complaints do not qualify as activity that is protected from retaliation under the FLSA. In *Lambert v. Genessee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993), the Second Circuit held that oral intracompany complaints are not activities protected under the FLSA's antiretaliation provision, 29 U.S.C. § 215(a)(3).

*Lambert* remains good law on this issue. It is true that more recently, in *Kasten*, 131 S. Ct. at 1335, the Supreme Court held that—contrary to *Lambert*—the FLSA's antiretaliation provision does encompass oral complaints. *Ibid* (holding that the FLSA complaint may be written or oral so long as it is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection"). *Kasten* clearly abrogated *Lambert* but only to the extent that *Lambert* held that making an oral complaint was not a protected activity under the FLSA.

*Kasten*, however, did not resolve the separate issue of whether the FLSA's antiretaliation protection extends to complaints made directly to an employer, or whether it extends only to formal complaints made to an administrative or governmental authority. Indeed, the Supreme Court expressly declined to address this issue in *Kasten*. *Id.* at 1336; *see also Minor v. Bostwick Labs, Inc.*, 669 F.3d 428, 433 (4th Cir. 2012) (noting that "*Kasten* did not settle the question of whether intracompany complaints are protected with the meaning of § 215(a)(3)"). Accordingly, *Lambert*'s holding that intracompany complaints do not qualify as protected activity under the FLSA remains binding law in this Circuit. *See, e.g., Easterly v.*

*Tri-Star Transp. Corp.,* 2015 WL 337565, at *9 (S.D.N.Y. 2015); *Parete v. Stop & Shop Supermarket Co. LLC*, 2013 WL 1192615, at *5 (D. Conn. 2013).[3]

In short, plaintiff has not alleged plausible grounds for relief for his FLSA retaliation claim. His retaliation claim fails, because he has not alleged facts to show that defendants knew or had reason to know of his complaint to the DOL. And he is precluded as a matter of Second Circuit law from basing a retaliation claim on his internal complaints to company management.

### Service Contract Act (Count Two)

Plaintiff alleges that defendants violated the SCA by failing to pay him required minimum monetary wages, vacation pay, and holiday pay, and by failing to provide certain required bona fide fringe benefits. Doc. #1, ¶¶ 6, 30. "With certain exceptions, the SCA 'requires the inclusion of specific provisions establishing minimum wage and fringe benefit levels in every contract entered into by the United States.'" *Ralton v. Collecto, Inc.*, 2015 WL 854976, at *2 (D. Mass. 2015) (quoting *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco–Ford Corp.*, *WDL Div.*, 661 F.2d 776, 778 (9th Cir. 1981)); *see also* 41 U.S.C. §§ 6702–6703. Defendants do not dispute that their contracts with the USPS are service contracts governed by the SCA. But they move to dismiss the claim on the ground that the SCA does not provide a private right of action.

Although the Second Circuit has apparently not addressed this issue, I am persuaded by the numerous other courts that have held that employee remedies under the SCA are limited to administrative mechanisms for redress, and that the SCA confers no private right of

---

[3] In light of the reasoning of *Kasten*, there may be good reason for the Second Circuit to reconsider its ruling in *Lambert*, and the Second Circuit's rule is not followed by the clear majority of other federal courts of appeals. *See, e.g., Minor*, 669 F.3d at 438 (collecting cases); *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 224 (3d Cir. 2010) (identifying circuit split).

action for an employee to seek relief in the federal courts. *See, e.g.*, *U.S. ex rel. Sutton v. Double Day Office Servs., Inc.*, 121 F.3d 531, 533 (9th Cir. 1997) ("The SCA restricts employee remedies for violations of the Act to administrative channels. The SCA does not confer a private right of action to employees; the Secretary of Labor has the exclusive right to enforcement."); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1227–1229 (D.C. Cir. 1991) (same); *Ralton*, 2015 WL 854976, at *2 (collecting cases).

Indeed, as best I can tell, no court to date has held that the SCA gives rise to a private right of action. Nor does plaintiff point to anything about the text or structure of the SCA that would support a different conclusion. Because no private right of action is available under the SCA, I will grant defendants' motion to dismiss Count Two of the complaint.

### *Intentional Infliction of Emotional Distress (Count Three)*

Plaintiff brings a claim for intentional infliction of emotional distress under "[f]ederal [c]ommon [l]aw." Doc. #1 at 7. Defendants move to dismiss this claim on the grounds that (1) no such claim is cognizable under federal law, and (2) the allegations are insufficient as a matter of law even if the claim were analyzed under Connecticut state law. At oral argument, plaintiff conceded that there is no federal common law claim for intentional infliction of emotional distress. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."); *Benedetto v. Nat'l Ass'n of Letter Carriers, AFL-CIO, Branch 608*, 613 F. Supp. 9, 12 (N.D. Ill. 1984) (refusing to "create federal common law remedies for 'intentional infliction of emotional distress'" because litigants "already have equivalent tort remedies under the laws of the various states").

Plaintiff nevertheless requests that the Court analyze his intentional infliction of emotional distress claim under Connecticut law, and defendants urge me to dismiss the claim

applying state law standards. It is well established that "the standard for conduct that suffices to establish a claim of intentional infliction of emotional distress is very high." *Miller v. Imaging on Call, LLC*, 2015 WL 150287, at *9 (D. Conn. 2015) (citing *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526–27, 43 A.3d 69 (2012), and granting motion to dismiss where "the complaint is devoid of any non-conclusory factual allegations to sustain a claim that defendant intended to cause plaintiff emotional distress"). As Judge Underhill has noted, "[l]iability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). Accordingly, "[a]n employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Id.* at 195.

Here, it is plain to me that the complaint does not remotely allege the type of aggravating facts to sustain a claim for intentional infliction of emotional distress. Viewed in the light most favorable to plaintiff, the facts suggest that plaintiff was an at-will employee who insisted on his rights to past wage payments, that defendants promptly and fully paid plaintiff in response to his demands but concluded in light of these demands that it would be too expensive to continue to employ plaintiff in the future, and that defendants discharged plaintiff for pretextual reasons (involving the claim of damage to a truck). Defendants' motives may be subject to legitimate question if plaintiff's claims are to be credited, but these facts are of an ordinary employment dispute and fall well short of the type of extreme and

11

utterly outrageous conduct that allows for a claim of intentional infliction of emotional distress.

CONCLUSION

Defendants' motion to dismiss (Doc. #12) is **GRANTED**, and plaintiff's complaint (Doc. #1) is **DISMISSED**. The Clerk of Court shall close this case.

It is so ordered.

Dated at Bridgeport this 25th day of March 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge